UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY A. CARDEW,

       Plaintiff,                 Case No. 2:16-cv-11278
                                           District Judge Mark A. Goldsmith
v.                                         Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 20) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 18)**

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary judgment (DE 20), **DENY** Plaintiff's motion for summary judgment (DE 18), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff, Bradley A. Cardew, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for child insurance benefits ("CIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 18), the

Commissioner's memorandum in opposition and cross motion for summary judgment (DE 20), Plaintiff's reply (DE 21), and the administrative record (DE 13).

### A.     Background

Plaintiff filed an application for CIB on April 23, 2012, alleging he has been disabled since November 30, 1999.  (R. at 22-28.)  Plaintiff's application was denied initially and upon reconsideration and he sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 29-31 and 36-38.)  ALJ Patricia McKay held a hearing on September 16, 2013.  (R. at 229-76.)  On April 21, 2014, ALJ McKay issued an opinion which found Plaintiff to not be disabled.  (R. at 13-19.)   The Appeals Council denied Plaintiff's request for review on February 11, 2016.  (R. at 2-4.)  ALJ McKay's decision thus became the Commissioner's final decision and Plaintiff timely commenced the instant action.

### B.     Plaintiff's History and Hearing Testimony

Plaintiff was born on December 2, 1977.  He was in a car accident on August 26, 1993, when he was 15 years old, which left him a wheelchair-bound C5-C6 quadriplegic.  (R. at 39, 232-33.)  He began at Oakland University in 1999 and graduated with a degree in accounting in 2009.  (R. at 240-41, 269.)  In 2004, his cousin helped him to secure an internship with the Lear Corporation ("Lear").  (R. at 241.)  He was employed as an intern from May 10, 2004 through August 14,

2004, when the internship ended. (R. at 59, 210.) During that fourteen-week time period, Lear paid him a total salary of $5,502.75 or $393.00 per week. (R. at 42, 59.) According to Plaintiff, he took the position to test himself to see how much work he could handle. (R. at 249.)

  To its credit, Lear accommodated Plaintiff's paraplegia in several ways. Although the other interns reported to the Southfield location, Plaintiff was unable to make the commute, and so was instead assigned to work in the Finance Department at the company's Rochester facility. He was also allowed modified hours of 10:00 a.m. to 4:00 p.m. every day. He used another employee's desk so that he would not have to sit in a common area of the office. (R. at 243.) He was also permitted frequent breaks in order to do "weight shifts," during which he adjusts his weight in the wheelchair for a few minutes every half hour. (R. at 203, 247-48.) As a further accommodation, the company installed two automatic doors for handicap access, which cost it $4,000. (R. at 204.) Such steps are consistent with the Americans with Disabilities Act of 1990, which explains that reasonable accommodations may include "part-time or modified work schedules" and "making existing facilities used by employees readily accessible to and usable by individuals with disabilities" and "part-time or modified work schedules. 42 U.S.C. § 1211(9).

Plaintiff's work varied from day to day but mostly involved working on budgets and spreadsheets, which he did by using one finger to type. (R. at 244-45.) He was unable to do the "busy work" assigned to most interns because he could not run errands or travel. (R. at 245.)

According to Plaintiff, the internship "ended like it was supposed to" in August. (R. at 250.) Thereafter, he and his cousin discussed an internship the next summer, but the program was scaled back due to economic concerns. (R. at 251.) In 2011, his cousin casually mentioned to him that Lear was hiring again, but only at the Southfield location and for 50-60 hour workweeks, which Plaintiff could not do. (Id.)

Plaintiff was 35 years old on the date of the hearing and testified that he lived with his parents, had never been married, and had no children. (R. at 238-39.) At that time he was working flexible hours, averaging about eleven hours a week, at Liberty Tax, and helping customers with tax preparation. (R. at 257, 259.)

### C. The Administrative Decision

In his April 21, 2014 decision, the ALJ first concluded that Plaintiff had not attained age 22 as of November 30, 1999, the alleged onset date. (R. at 15.)[1] At

---

[1] Claimants are entitled to child's disability benefits if they are unmarried and under the age of 18. If they are older than 18, they qualify if they have a disability that began before they turned 22. 20 C.F.R. § 404.350(a)(4)-(5).

4

**Step 1** of the sequential evaluation process,[2] the ALJ found that Plaintiff had engaged in substantial gainful activity ("SGA") from May 10, 2004 through August 14, 2004, the period of his Lear internship. (R. at 15.) Because CIB require the claimant to be continuously disabled prior to attaining age 22 through the date of the application, the ALJ concluded that Plaintiff was not entitled to CIB under the Social Security Act. (R. at 19.)

### D.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. ANALYSIS

Plaintiff argues that the ALJ erred in her conclusion that he was engaged in SGA for three reasons.  First, he contends that his internship was not gainful activity.  Second, he asserts that his internship was an unsuccessful work attempt ("UWA") and therefore did not qualify as SGA.  Finally, he argues that the ALJ incorrectly analyzed the employer subsidy and impairment-related work expenses in calculating his monthly earnings.  The Commissioner opposes the motion, asserting that the ALJ's decision is supported by substantial evidence, while

acknowledging that the result in this case is harsh. I likewise acknowledge that the result seems harsh, but believe that the law compels it and that the ALJ reached the correct conclusion. I will address each argument in turn.

### 1. Gainful Activity

Plaintiff first argues that his internship was a student learning experience and not the kind of work generally found to be SGA. Pursuant to the regulations, SGA is activity that is both substantial and gainful, which are defined as:

> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work *usually done for pay or profit, whether or not a profit is realized*.
>
> (c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572 (emphasis added). Plaintiff asserts that his internship was not usually the type done for pay or profit because, according to Marianne Churchwell, the Vice President of Human Resources at Lear, it was merely a "training position for full time 'regular' jobs." (R. at 210.)

8

Defendant counters that the paid internship was closer to a traditional employer/employee relationship because interns were expected to meet the requirements of their position. Defendant also notes that the Regulations describe the types of work that are not considered SGA, such as such as taking care of himself, household tasks, and hobbies, and the work Plaintiff performed work at his internship was substantially different.

Here, although Plaintiff was not expected to perform his job like a full time employee, his internship at Lear represented gainful activity. The Social Security Ruling on what represents gainful activity is instructive in light of Plaintiff's argument that the internship was merely educational training for a full time job, because it specifically notes that "nonrenumerative training" is not considered SGA, but does not include training done for pay in its list of non-SGA tasks. *Titles II & Xvi: Basic Disability Evaluation Guides*, Soc. Sec. Ruling 82-53, 739 (S.S.A. 1982). Moreover, the Ruling specifies that work can be SGA "even if it is performed on a part-time basis, or even if the individual does less, is paid less, or has less responsibility than in previous work." *Id*. Furthermore, such work is "usually done for pay or profit" and thus is considered SGA regardless of "whether or not a profit is realized." *Id.* Plaintiff's work on spreadsheets in the finance department of a corporate office is the type of work usually done for profit, and therefore his argument that it was not SGA is without merit.

## 2. Unsuccessful Work Attempt

Plaintiff argues in the alternative that his internship at Lear ended as a result of a UWA and thereby was not SGA. The ALJ considered this argument and concluded that the internship was not a UWA because "it was a summer internship and was not designed to continue." (R. at 16.) Pursuant to the Regulations,

> Ordinarily, work you have done will not show that you are able to do substantial gainful activity if, after you worked for a period of 6 months or less, *your impairment forced you to stop working or to reduce the amount of work you do* so that your earnings from such work fall below the substantial gainful activity earnings level in paragraph (b)(2) of this section, and you meet the conditions described in paragraphs (c)(2), (3), and (4) of this section.
>
> \*     \*     \*
>
> (3) If you worked 6 months or less. We will consider work of 6 months or less to be an unsuccessful work attempt if you stopped working or you reduced your work and earnings below the substantial gainful activity earnings level *because of your impairment or because of the removal of special conditions* that took into account your impairment and permitted you to work.

20 C.F.R. § 404.1574(c)(1) and (3) (emphasis added). The regulations also provide examples of such special conditions, the removal of which could lead to a UWA, such as:

> (1) You required and received special assistance from other employees in performing your work;
>
> (2) You were allowed to work irregular hours or take frequent rest periods;
>
> (3) You were provided with special equipment or were assigned work especially suited to your impairment;

10

>(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>
>(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>
>(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c).[3]

Here, there is no real dispute that Plaintiff's internship involved the above six accommodations: he received special assistance from other employees because he was unable to perform busy work tasks; he was allowed to work a lower number of hours and take frequent breaks; he was provided with a desk of his own and the company installed handicap access doors especially for him to enter and exit the building; his parents drove him to and from work in a modified van; his work productivity was allowed to be lower than that of the other interns; and he received the position because of his cousin. (R. at 203.) The crux of the dispute is whether the *removal* of those accommodations forced Plaintiff out of the internship. Plaintiff contends that the end of his employment was a UWA because, although his internship was completed as scheduled, its conclusion represented the end of

---

[3] According to Lear's Vice President of Human Resources, the first and fifth of these special conditions are extended to all summer interns, in contrast to "full time 'regular' jobs." (R. at 210.)

the special conditions and he was not asked back for another internship or to stay on as a regular employee. Defendant counters that the internship did not end because special conditions were removed; it ended because it was "supposed to." (R. at 250.)

Defendant likens it to a factory closing because of adverse economic conditions, leaving any employees receiving special conditions to assist with the performance of their jobs out of work, but not as a result of those conditions ending. Plaintiff challenges this hypothetical, arguing that if the factory closed, workers with special conditions would be unable to find other work, and therefore their impairments would be directly related to the cessation of their work.

Despite Plaintiff's ardent arguments to the contrary, the end of Plaintiff's internship cannot be considered a UWA within the meaning of the regulations, which require that the individual stopped or reduced his or her work hours where "your impairment *forced you* to stop working[,]" the cessation or reduction in work occurring "*because* of your impairment or *because* of the removal of special conditions." 20 C.F.R. § 404.1574(c) and subsection (3) therein (emphasis added). Here, Plaintiff successfully completed his internship, which began in May and ended in August "like it was supposed to," according to Plaintiff's own testimony. (R. at 250.) Plaintiff also testified to the fact that he did not intern the following summer because the "intern program was going to be cut back quite a bit because

12

of the economy" and that he received "no job offer immediately" following the internship. This testimony further weakens Plaintiff's argument that he was unable to continue working for Lear as a result of the special accommodations of his internship being removed. This is not a situation where an internship could have continued or turned into a full time job but for the removal of the special conditions. Instead, Plaintiff took a temporary internship, stayed in his position until its planned completion, and was not asked back because of primarily economic reasons unrelated to his impairment, i.e., the internship program being scaled back.

It is instructive to consider how Plaintiff's internship *could* have been a UWA: if Lear had decided in July that he was no longer entitled to work modified hours and was required to report to the Southfield office, Plaintiff would have needed to leave his internship early. This would have been a clear case of a UWA because Plaintiff would have left as a result of the special accommodations being removed. Here, though, the special accommodations lasted until the planned end of his internship. In other words, he *successfully completed* his internship.

The result that the Plaintiff's brief attempt to engage in an internship would bar him from receiving CIB seems unfair and, as the Commissioner concedes, seems to "create a disincentive for an impaired individual to engage in a temporary work arrangement[.]" (DE 20 at 13.) The Commissioner argues, however, that it

13

does not actually create a disincentive because, for work performed under special conditions, the Regulations allow adjudicators to find that the work performed at SGA earning levels "does not show that you have the ability to do substantial gainful activity." 20 C.F.R § 404.1573(c) (DE 20 at 13.)  Defendant asserts that in this case the ALJ carefully considered the special conditions and Plaintiff's ability to engage in SGA and made the appropriate earning reduction to account for it. This will be addressed in section 3.

### 3.     Analysis of Subsidies

Plaintiff interned at Lear from May 10, 2004 until August 14, 2004, for a period of fourteen weeks, earning a total of $5,502.75 or $1,572.00 per month.  (R. at 17.)  The threshold for SGA in 2004 was $810 per month.  (R. at 212.)  Accordingly, Plaintiff's earnings represented SGA unless applicable subsidies or impairment related expenses could offset his income.

As explained by Ms. Churchwell, the Vice President of Human Resources at Lear, Plaintiff "was provided accommodation including lower standard of productivity and fewer hours based on his condition," including "frequent breaks." (R. at 203.)  According to Ms. Churchwell, Plaintiff's position "was designed specifically for him." (Id.)  She assessed that Plaintiff was approximately 35% less productive than other interns because of his lower hours and frequent breaks.  (R. at 213.)  Ms. Churchwell also stated that:

> As a special circumstance of Mr. Cardew's employment with Lear, two automatic doors for handicap access were installed. This accommodation came at a cost of $4,000.00 *to Lear*.

(R. at 204.) (emphasis added).

The ALJ considered these statements and reduced Plaintiff's countable earnings of by 35%, making his monthly income (based on several different calculations) between $946.94 and $1176.26 per month. Rather than considering the $4,000.00 as a subsidy and deducting it from Plaintiff's earnings, the ALJ noted that the "costs incurred by Lear in adapting the workplace to suit the claimant's needs are not impairment related work expenses because they were not a cost paid by the claimant." (R. at 18.) Plaintiff argues that the ALJ erred by failing to subtract the $4,000.00 spent by Lear to install automatic doors for handicap access from his earnings. (R. at 204.) The issue is whether that money can be deducted from Plaintiff's earnings as a subsidy or should be considered an impairment-related work expense, with the cost borne by Lear. Defendant asserts that Plaintiff is attempting to "end run" this provision by calling the impairment-related expense a subsidy pursuant to 20 C.F.R. § 404.1573.

Although the result is "harsh," substantial evidence supports the ALJ's conclusion on this issue and therefore her decision must be affirmed. *See Blakely*, 581 F.3d at 406 ("if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would

have supported an opposite conclusion." (internal quotations omitted)); (DE 20 at 18.) First, substantial evidence supports the ALJ's decision to consider Lear's expenditure an impairment-related expense. The regulations define such expenses as "items and services, which, because of your impairment(s), you need and use to enable you to work." 20 C.F.R. § 404.1576(a). Here, the automatic doors are an item Plaintiff needed to enter and exit the building in his wheelchair to enable him to do his work, making them an impairment-related expense within the meaning of the regulations. Subsidies, on the other hand, are utilized where "the true value of your work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to you for your work." 20 C.F.R. § 404.1574(a)(2). There is no indication that the automatic doors lessened the value or amount of work Plaintiff did when compared with other interns, thereby making it difficult to consider their purchase a subsidy. Because the regulations differentiate between money spent on items to enable the individual to work and the actual value of the individual's work, the ALJ's decision to consider Lear's purchase of the automatic doors an impairment-related expense is supported by substantial evidence and the relevant rules.

Impairment-related work expenses will be deducted only where the claimant pays for the cost of the item or service. *Id.* at § 404.1576(b)(3); *see also Titles II & Xvi: Determining Whether Work Is Substantial Gainful Activity-Employees*, SSR

16

83-33, 1983 WL 21255, at *6 (S.S.A. 1983) ("The amount of [impairment-related work expense] may be deducted only if the cost is paid by the disabled individual . . . ."). There is no dispute in this case that Lear, and not Plaintiff, paid for the doors to be installed. Because it was not a cost paid by Plaintiff, substantial evidence supports the ALJ's decision to not deduct the $4,000.00 as an impairment-related work expense. Put another way, Plaintiff's earnings did not net out to a lesser amount because he had to incur impairment-related expenses in order to achieve them; that expense was borne by his employer. Accordingly, Plaintiff's monthly income during his internship was well above the threshold for determining SGA.

## F. CONCLUSION

"The case before us illustrates better than most that the judicial power is often difficult in its exercise." *Texas v. Johnson*, 491 U.S. 397, 420 (1989) (Kennedy, J. Concurring). Nevertheless, "[t]he hard fact is that sometimes we must make decisions we do not like. We make them because they are right, right in the sense that the law . . . compel[s] the result." *Id.* at 420-421. Plaintiff, who has been a paraplegic since the age of 15, completed a summer internship in 2004 and earned $5,502.75 and, as a result, is not entitled to receive CIB. The Undersigned, much like the ALJ, considered various possibilities and calculations within the Regulations to ensure that this result, though somewhat stringent, is correct. (*See,*

17

*e.g.*, R. at 18-19.) From a review of the record as a whole, the Undersigned concludes that the ALJ's decision denying benefits to Plaintiff is legally correct and supported by substantial evidence. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 18), **GRANT** Defendant's motion for summary judgment (DE 20), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 14, 2017

s/Anthony P. Patti
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 14, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti