UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY A. CARDEW,

      Plaintiff,                                           Case No. 16-cv-11278

vs.                                                   HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**OPINION & ORDER**
**(1) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 26), (2) ACCEPTING THE RECOMMENDATION OF THE MAGISTRATE JUDGE (Dkt. 25), (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 18), AND (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 20)**

In this social security case, Plaintiff Bradley A. Cardew appeals from the final determination of the Commissioner of Social Security that he is not entitled to child's insurance benefits. The matter was referred to Magistrate Judge Anthony P. Patti for a Report and Recommendation ("R&R"). The parties filed cross-motions for summary judgment (Dkts. 18, 20), and the magistrate judge issued an R&R recommending that the Court grant the Commissioner's motion for summary judgment and deny Cardew's motion for summary judgment (Dkt. 25). Cardew filed objections to the R&R (Dkt. 26); the Commissioner subsequently filed a response (Dkt. 27).

For the reasons that follow, the Court overrules Cardew's objections and accepts the recommendation contained in the magistrate judge's R&R. The Commissioner's motion is granted and Cardew's motion is denied. The final decision of the Commissioner is affirmed.

**I. LEGAL STANDARD**

1

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by the [Administrative Law Judge ("ALJ")]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec. Admin., 530 F. App'x 419, 425 (6th Cir. 2013).

## II. ANALYSIS

Cardew offers two objections to the magistrate judge's R&R: (i) the magistrate judge erred in finding that the ALJ's conclusion that Cardew's summer internship with Lear Corporation did not constitute an unsuccessful work attempt was supported by substantial evidence; and (ii) the magistrate judge erred in finding that the ALJ's conclusions regarding employer subsidy and countable earnings were supported by substantial evidence. See Obj. at 1, 6. The Court addresses each in turn, concluding that both lack merit.

### A. Objection One

Cardew argues that the magistrate judge erred in concluding that there was substantial evidence to support the ALJ's finding that his internship with Lear in the summer of 2004 did not

constitute an unsuccessful work attempt. Specifically, Cardew contends that the magistrate judge erred when he relied on the fact that the internship ended as planned, a consideration that Cardew believes to be irrelevant to the inquiry of whether there was an unsuccessful work attempt.

In order to receive child's insurance benefits, a claimant must show that he is the child of an individual entitled to old-age or disability benefits, or was the child of a fully insured individual and that (i) he filed an application for benefits; (ii) at the time the application was filed, he was unmarried and either under eighteen or suffering from a disability that began prior to turning twenty-two; and (iii) he is or was dependent on the insured individual. 42 U.S.C. § 402(d)(1). Where, as here, the claimant files the application after he turns eighteen, he is "required to show that he [has] been under a continuous disability which began before his twenty-second birthday." Zharn v. Comm'r of Soc. Sec., 35 F. App'x 225, 227 (6th Cir. 2002).

An individual is not under a continuous disability if he has engaged in substantial gainful activity. See Futernick v. Richardson, 484 F.2d 647, 648 (6th Cir. 1973). The ALJ ruled, and the magistrate judge affirmed, that Cardew engaged in substantial gainful activity from May 10, 2004 through August 14, 2004, the period during which he was a summer intern at Lear. Cardew argues that this internship did not constitute substantial gainful activity because it was an unsuccessful work attempt. The magistrate judge rejected this argument, reasoning that the internship ended when it was supposed to, not due to the removal of any special conditions. It is this finding to which Cardew objects.

The social security administration regulations state that if a claimant works six months or less, that work will be considered an unsuccessful work attempt "if you stopped working or you reduced your work and earnings below the substantial gainful activity earnings level because of your impairment or because of the removal of special conditions that took into account your

3

impairment and permitted you to work." 20 C.F.R. § 404.1574(c)(3). Examples of special conditions include (i) being provided special assistance in performing work; (ii) working irregular hours or taking frequent rest periods; (iii) being provided special equipment or assigned work that is tailored to the employee's impairment; (iv) being provided assistance getting to and from work; (v) working at a lower standard of productivity; and (vi) the opportunity to work was given because of personal or familial relationships. See 20 C.F.R. 404.1573(c). Each of these special conditions applied to Cardew during his time at Lear. He was permitted to sit a desk tailored to his needs, take frequent rest periods, and was given different work than his fellow interns in order to accommodate his impairment. A.R. at 92 (Dkt. 13). He was driven by family to and from work and was provided with handicap-accessible doors at his office so that he could more easily enter and exit the facility. Id. at 91. There is also evidence that a family member provided him with the internship and that he was permitted to work at a lower level of productivity. Id.

Cardew disputes the magistrate judge's conclusion that a claim of an unsuccessful work attempt will only lie when special conditions are removed prior to the conclusion of employment, thus causing the employee to stop working. Cardew argues that an unsuccessful work attempt should also be found where the position itself is discontinued, which results in the removal of special conditions. He asserts that "[u]nder either circumstances, the special conditions that allowed Plaintiff to work no longer exist." Obj. at 4. He argues that "[t]here is no language in the regulations that identifies a necessary context for the removal of special conditions and neither the ALJ, Defendant, nor the magistrate judge cite to any language, precedent, or rationale which supports such a conclusion." Id. at 3.

However, an examination of both the language of the regulation and case law supports the ALJ's and magistrate judge's interpretation. The regulation states that there is an unsuccessful

4

work attempt "if you stopped working . . . because of your impairment or because of the removal of special conditions that took into account your impairment and permitted you to work." 20 C.F.R. § 404.1574(c)(3). A logical reading of the regulation is that an unsuccessful work attempt will only be found if the employee's reason for stopping work is related to his impairment; either the impairment forced the employee to stop working, or the special conditions that previously permitted him to work with an impairment were removed and caused him to be unable to continue his work. There is nothing in the regulation that provides for an unsuccessful work attempt where the employee stops work, not for reasons related to his impairment, but because the program in which the employee was working concluded.

The Eighth Circuit's ruling in King v. Chater, 72 F.3d 85 (8th Cir. 1995), supports this interpretation. In that case, the plaintiff argued that his job as a forestry research technician lasted less than six calendar months and should be considered an unsuccessful work attempt. The court held that it did not have to determine how long the plaintiff actually worked because "there is substantial evidence in the record to support the conclusion that that job ended not for reasons related to disability on Mr. King's part but, instead, because of the expiration of the research contract under which it was performed." Id. at 87. The court noted that the job was a summer position and ended naturally at the conclusion of the season. Id.; see also Driskell v. Barnhart, 182 F. Supp. 2d 803, 807 (S.D. Iowa 2002) ("[I]t is clear that for work to be considered an unsuccessful work attempt, the claimant's impairment must be the deciding factor which interferes with the ability to continue working.").

King supports the conclusion that an unsuccessful work attempt will only be found where employment ends "for reasons related to disability," not because a work program reached its conclusion. Because Cardew's internship ended at the conclusion of Lear's summer program, and

5

not because of reasons related to his impairment, he cannot demonstrate an unsuccessful work attempt.

**B. Objection Two**

Cardew next argues that there is not substantial evidence to support the ALJ's findings regarding the value of his work. Specifically, Cardew argues that the ALJ erred in determining that the $4,000 handicap-accessible doors installed by Lear were properly classified as an impairment-related work expense borne by the company, rather than a subsidy. He also argues that the ALJ erred in determining his productivity when she failed to consider the delegation of other employees to assist him in completing assignments. This objection is without merit.

The Court first considers whether the handicap-accessible doors installed by Lear are properly classified as an impairment-related work expense or a subsidy. This distinction is significant because it determines whether Cardew's earnings were sufficiently high to constitute substantial gainful activity. "Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity." 20 C.F.R. § 404.1574(a)(1). "[I]f you worked for substantial earnings, we will find that you are able to do substantial gainful activity." Id. In 2004, monthly earnings of $810 or more constituted substantial earnings. A.R. at 15. The record indicates that Cardew was paid $1,572 per month during his internship. Id. at 17.

"However, only the amount that a claimant actually <u>earns</u> is considered in establishing whether that claimant is involved in [substantial gainful activity]." Nazzaro v. Callahan, 978 F. Supp. 452, 459 (W.D.N.Y. 1997) (emphasis in original). A subsidy, the amount paid over the reasonable value of the work performed, is subtracted from the claimant's gross earnings when determining if substantial gainful activity was performed. 20 C.F.R. § 404.1574(a)(2). On the

other hand, an impairment-related work expense will only be deducted from a claimant's gross earnings if the claimant "pay[s] the cost of the item or service." 20 C.F.R. § 404.1576(b)(3). "No deduction will be allowed to the extent that payment has been or will be made by another source." Id. There is no dispute that Lear paid for the handicap-accessible doors.

Cardew argues that the doors cannot be an impairment-related work expense because such expenses are "clearly in the context of the expenses incurred by the individual and not those incurred by the employer." Obj. at 6. Under Cardew's reading, expenses incurred by the employer can never be classified as impairment-related work expenses. An examination of the regulation governing impairment-related work expenses shows that there is no exclusion for employers. It states that "[n]o deduction will be allowed to the extent that payment has been or will be made by another source." 20 C.F.R. § 404.1576(b)(3). There is nothing in the regulation that says the other source cannot be the claimant's employer.

Cardew also argues that the doors are better characterized as a subsidy. He argues that additional expenses incurred by the employer are "more properly considered under the subsidy analysis, which accounts for the true value of the employees [sic] work to his/her employer." Obj. at 7 (emphasis in original). However, the regulations speak of subsidies in the context of payments made directly to the employee in an amount greater than the reasonable value of the actual services performed. They state that "[w]e consider your work to be subsidized if the true value of your work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to you for your work." 20 C.F.R. § 404.1574(a)(2) (emphasis added). An expense incurred by the employer to accommodate an impaired employee does not relate to the value of the work performed by the employee, the sole inquiry in determining whether a subsidy has been paid. See Nazzaro, 978 F. Supp. at 460 (rejecting claimant's contention that

7

the cost of providing a job coach should be considered an "indirect subsidy" because "the regulations provide only that a subsidy may be found where an employer indicates that an employee's work is not worth the value of his pay.").

Cardew also argues that the ALJ erred in assessing the value of his work because she failed to consider the delegation of other employees to aid him in the performance of his duties. Specifically, Cardew argues that "[t]he magistrate judge never addresses the ALJ's failure to take into account the delegation of other employees to aid Plaintiff with stapling, copying, getting things out of cabinets, or similar tasks that he was unable to perform." Obj. at 9. A review of the ALJ's decision shows that she did in fact consider this assistance in determining that Cardew was paid 35% more than the reasonable value of his work. The ALJ relied on the testimony of Marianne Churchwell, vice president of human resources at Lear, who testified to Cardew's "reduced work hours, arrangement of work locations closer to [his] home, inability to travel to meetings, <u>inability to do certain clerical functions</u>, and need for frequent breaks." A.R. at 18 (emphasis added). By noting that Cardew was unable to perform certain clerical functions, the ALJ implicitly recognized that other employees had to be delegated those responsibilities.[1] Thus, Cardew's objection fails.

### III. CONCLUSION

For the above-stated reasons, the Court overrules Cardew's objections (Dkt. 26) and accepts the recommendation contained in the Magistrate Judge's R&R (Dkt. 25). Cardew's motion

---

[1] Cardew also briefly argues that the Government violated the <u>Chenery</u> doctrine by arguing for affirmance on grounds not addressed by the ALJ, namely, that the installation of handicap-accessible doors should constitute a subsidy. Obj. at 10. Even assuming such a violation occurred, which the Court does not decide, there is no reason to believe that a remand would lead to a different result. See <u>Japarkulova v. Holder</u>, 615 F.3d 696, 701 (6th Cir. 2010) ("[E]ven when the agency's reasoning was inadequate, its decision may be upheld on the basis of harmless error if the petitioner's prospects are otherwise so weak that there is no reason to believe that . . . remand might lead to a different result.").

for summary judgment (Dkt. 18) is denied and the Commissioner's motion for summary judgment (Dkt. 20) is granted.

SO ORDERED.

Dated: August 25, 2017  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
 United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 25, 2017.

 s/Karri Sandusky
 Case Manager